IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DONNA BUETTNER-HARTSOE, *et al.*, | * | |
| Plaintiffs, | * | Civil Action No. RDB-20-3132 |
| v. | * | |
| BALTIMORE LUTHERAN HIGH SCHOOL ASSOCIATION, *d/b/a/* CONCORDIA PREPARATORY SCHOOL, | * * * | |
| Defendant. | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

| | | |
|---|---|---|
| JENNIFER PULLEN, | * | |
| Plaintiff, | * | Civil Action No. RDB-20-3214 |
| v. | * | |
| BALTIMORE LUTHERAN HIGH SCHOOL ASSOCIATION, *d/b/a/* CONCORDIA PREPARATORY SCHOOL, | * * * | |
| Defendant. | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

| | | |
|---|---|---|
| ANDREA CONRAD, *et al.*, | * | |
| Plaintiffs, | * | Civil Action No. RDB-20-3229 |
| v. | * | |
| BALTIMORE LUTHERAN HIGH SCHOOL ASSOCIATION, *d/b/a/* CONCORDIA PREPARATORY SCHOOL, and LUTHERAN CHURCH-MISSOURI SYNOD, | * * * | |

SOUTHEASTERN DISTRICT,

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \*

ARIANA GOMEZ,

    Plaintiff,                      Civil Action No. RDB-20-3267

BALTIMORE LUTHERAN HIGH SCHOOL ASSOCIATION, *d/b/a/* CONCORDIA PREPARATORY SCHOOL, and LUTHERAN CHURCH-MISSOURI SYNOD, SOUTHEASTERN DISTRICT,

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \*

SELENA BARBER, *et al.*,

    Plaintiffs,                    Civil Action No. RDB-21-0691

v.

BALTIMORE LUTHERAN HIGH SCHOOL ASSOCIATION, *d/b/a/* CONCORDIA PREPARATORY SCHOOL,

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

These five cases are brought by five different women, all former students of Concordia Preparatory School ("CPS"), previously known as Baltimore Lutheran High School. All of the women make similar allegations of sexual assault and verbal sexual harassment by male students at the school dating back to 2016. They allege that school officials failed to adequately

2

address their numerous complaints or take any meaningful action in response, thereby cultivating a hyper-sexualized culture at the school. In this series of cases, three minors, N.H., H.C., and A.G.—through their respective mothers, Donna Buettner-Hartsoe, Andrea Conrad, and Selena Barber—and two adults, Jennifer Pullen and Ariana Gomez (collectively, "Plaintiffs"), bring federal and state claims against Defendant Baltimore Lutheran High School Association, now doing business as Concordia Preparatory School, and Defendant Lutheran Church-Missouri Synod, Southeastern District ("LCMS").[1]

Presently pending before this Court are Defendant Concordia Preparatory School's Partial Motions to Dismiss, or in the Alternative, for Summary Judgment. (RDB-20-3132, ECF No. 108; RDB-20-3214, ECF No. 60; RDB-20-3229, ECF No. 75; RDB-20-3267, ECF No. 112; RDB-21-0691, ECF No. 37.)[2] These Motions relate to Plaintiffs' claims in Count I of their respective Amended Complaints under Title IX of the Education Amendments Act of 1972 ("Title IX"),[3] 20 U.S.C. § 1681, *et seq.* (RDB-20-3132, Am. Compl., ECF No. 69; RDB-20-3214, Am. Compl., ECF No. 53; RDB-20-3229, Am. Compl., ECF No. 24; RDB-20-3267, Am. Compl., ECF No. 26; RDB-21-0691, Am. Compl., ECF No. 29.) In these Motions, the Defendant contends that it is not subject to Title IX jurisdiction as it was not a direct recipient of federal financial assistance during the relevant time periods. This argument is without merit, as the tax-exempt status of the Defendant under 26 U.S.C. § 501(c)(3) constitutes federal financial assistance for the purposes of Title IX. The parties' submissions have been reviewed,

---

[1] On May 18, 2021, all of these cases were assigned to the undersigned Judge. Through its June 23, 2021 Order, this Court consolidated these cases for discovery and motions. (RDB-20-3132, ECF No. 65; RDB-20-3214, ECF No. 48; RDB-20-3229, ECF No. 61; RDB-20-3267, ECF No. 101; RDB-21-0691, ECF No. 17.)
[2] The Motions, Responses, and Replies, along with supporting exhibits, filed in all five cases are nearly identical.
[3] Title IX of the Education Amendments of Act of 1972 protects individuals from discrimination on the basis of sex in education programs or activities that receive federal financial assistance. 20 U.S.C. § 1681(a).

and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, Defendant CPS's Motions, construed as Partial Motions for Summary Judgment, are DENIED.

**BACKGROUND**

In a Memorandum Opinion dated June 23, 2021, this Court detailed Plaintiffs' factual allegations. (*E.g.*, RDB-21-0691, ECF No. 15 at 5-20.)[4] The presently pending Motions relate only to whether there is a genuine dispute of fact as to whether CPS received federal financial assistance and was subject to Title IX requirements at the times relevant to Plaintiffs' claims. Accordingly, this Court provides the following summary of facts necessary to resolve the Motions at issue.

Concordia Preparatory School, originally known as Baltimore Lutheran High School, is a religiously affiliated private school that is exempt from federal income taxes under Section 501(c)(3) of the Internal Revenue Code. (*E.g.*, RDB-21-0691, Financial Statements, ECF No. 39 *SEALED*.) Plaintiff N.H. attended CPS from Fall 2017 through Spring 2018. (RDB-20-3132, ECF No. 69 ¶¶ 11, 64, 84.) Plaintiff Pullen attended CPS from Fall 2014 through Spring 2019. (RDB-20-3214, ECF No. 53 ¶¶ 9, 68, 91.) Plaintiff H.C. attended CPS from Fall 2019 through Spring 2020. (RDB-20-3229, ECF No. 24 ¶¶ 11, 90, 114.) Plaintiff Gomez attended CPS from Fall 2017 through Spring 2019. (RDB-20-3267, ECF No. 26 ¶¶ 10, 72, 96.) Plaintiff A.G. attended CPS from Winter 2016 through May 2019. (RDB-21-0691, ECF No. 29 ¶¶ 11, 106, 117.)

---

[4] This same Memorandum Opinion was docketed in each of the five consolidated cases. (*See* RDB-20-3132, ECF No. 63; RDB-20-3214, ECF No. 46; RDB-20-3229, ECF No. 59; RDB-20-3267, ECF No. 99; RDB-21-0691, ECF No. 15.) In that Memorandum Opinion, this Court denied Defendant CPS's motions to dismiss the Title IX claims of Plaintiffs H.C., Gomez, and A.G. (*E.g.*, RDB-21-0691, ECF No. 15 at 32–36.)

From 2014 through 2020, CPS received funding from the State of Maryland in the form of grants to aging schools, textbook and technology grants, and a grant from the State of Maryland Field House Emergency Fund. (*E.g.*, RDB-21-0691, Def. Answers to Interrogs. 23–26, ECF No. 39-3 *SEALED*.)[5] CPS did not apply for federal funding until March or April 2020, when it applied for a Paycheck Protection Program ("PPP") loan from the United States Small Business Administration ("SBA"). (*E.g.*, RDB-21-0691, Johnson Tr. 394, ECF No. 39-1 *SEALED*.) This request was made in the face of the COVID-19 pandemic. (*E.g., id.*; RDB-21-0691, Def. Answers to Interrogs. 23–26, ECF No. 39-3 *SEALED*.) On April 8, 2020, CPS received a loan from the SBA in the amount of $483,400.00. (*E.g.*, RDB-21-0691, SBA Confirmation, ECF No. 39-10 *SEALED*.) That loan was forgiven as of November 10, 2020. (*E.g.*, RDB-21-0691, Def. Answers to Interrogs. 26, ECF No. 39-3 *SEALED*.)

## STANDARD OF REVIEW

CPS's Motions are styled as partial motions to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450

---

[5] CPS also received state government funding in the form of: 5 Broadening Options & Opportunities for Students Today (BOOST) scholarships from the Maryland Department of Education in 2016; "Title II Preparing, Training, and Recruiting High-Quality Teachers, Principals, or Other School Leaders" grants from 2016 through 2020; payment for "Easement/Loss of Use – SHA Project Income" in 2018; a School Safety Grant from the Maryland Department of Education in 2020, and; Elementary and Secondary School Emergency Relief (ESSER) and Governor's Emergency Education Relief (GEER) grants through Baltimore County Public Schools in 2020. (RDB-21-0691, Def. Answers to Interrogs. 23–26, ECF No. 39-3 *SEALED*.)

(4th Cir. 2007). However, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

Under Rule 56 of the Federal Rules of Civil Procedure, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The same standard applies for a motion for partial summary judgment. *See Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine dispute over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In considering a motion for summary judgment, this Court must consider the facts and all reasonable inferences "in the light most favorable to the nonmoving party." *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). Additionally, this Court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C.*

*Admin. Off. of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that a trial court may not make credibility determinations at the summary judgment stage).

This Court considers, and the parties rely upon, matters outside of the pleadings, including Plaintiffs' exhibits attached to their Responses to CPS's Motions. *See Miller v. Md. Dep't of Nat. Res.*, 813 Fed App'x 869, 873 (4th Cir. 2020) (concluding that a declaration attached to a response in opposition to a dispositive motion "is plainly outside the pleadings"). Because CPS styled its Motions as a partial motion to dismiss, or in the alternative, for summary judgment, CPS was on notice that the Court could treat the Motions as motions for summary judgment and rule on that basis. Accordingly, the Court will review CPS's Motions under the Rule 56(a) standard.

## ANALYSIS

CPS argues that it is entitled to summary judgment as to Plaintiffs' Title IX claims because there is no dispute that it was not a recipient of federal financial assistance during the relevant time periods. (*E.g.*, RDB-21-0691, CPS Mem. 4–8, ECF No. 37-1.) Plaintiffs argue CPS's tax-exempt status under 26 U.S.C. § 501(c)(3) represents federal financial assistance sufficient to subject the school to the requirements of Title IX. (*E.g.*, RDB 21-0691, Plaintiffs' Resp. 3–5, ECF No. 38.) The tax-exempt status of a private school subjects it to the same requirements of Title IX imposed on any educational institution. CPS cannot avail itself of federal tax exemption but not adhere to the mandates of Title IX.

Title IX of the Education Amendments Act of 1972 provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity

receiving Federal financial assistance."[6] 20 U.S.C. § 1681(a). As the United States Court of Appeals for the Fourth Circuit has held:

> To establish a Title IX claim based on student-on-student sexual harassment, a plaintiff must show that:
>
> > (1) they were a student at an educational institution receiving federal funds;
> >
> > (2) they suffered sexual harassment that was so severe, pervasive, and objectively offensive that it deprived them of equal access to the educational opportunities or benefits provided by their school;
> >
> > (3) the school, through an official who has authority to address the alleged harassment and to institute corrective measures, had actual notice or knowledge of the alleged harassment; and
> >
> > (4) the school acted with deliberate indifference to the alleged harassment.

*Doe v. Fairfax Cty. Sch. Bd.*, 1 F.4th 257, 263–64 (4th Cir. 2021). Title IX's regulations clarify that a "recipient" of federal funds is any entity or person "to whom Federal financial assistance is extended directly or through another recipient and which operates an education program or activity which receives such assistance." 34 C.F.R. § 106.2(i).

At issue in the presently pending motions is whether CPS, as a tax-exempt educational institution, qualifies as an educational institution receiving federal funds. Under 26 U.S.C. § 501(c)(3), "[c]orporations, and any community chest, fund, or foundation, organized and operated exclusively for . . . religious . . . or educational purposes" are exempt from federal income taxation. Neither the Supreme Court nor the United States Court of Appeals for the

---

[6] The United States Supreme Court has held that Title IX is enforceable through an implied private right of action. *See Cannon v. University of Chicago,* 441 U.S. 677, 717 (1979).

Fourth Circuit have directly addressed whether tax-exempt status under § 501(c)(3) constitutes federal financial assistance for purposes of Title IX. However, key decisions of both courts support this Court's conclusion that federal tax exemption qualifies as federal financial assistance under Title IX.

In a pair of opinions, the United States Supreme Court has considered when an entity qualifies as a recipient of federal financial assistance for the purposes of Title IX. In *Grove City Coll. v. Bell*, 465 U.S. 555 (1984), the Court held that "Title IX coverage is not foreclosed because federal funds are granted to [the school's] students rather than directly to one of the [school's] educational programs." 465 U.S. at 569–70. Notably, the Court determined that "[t]here is no basis in the statute for the view that only institutions that themselves apply for federal aid or receive checks directly from the federal government are subject to regulation [under Title IX]." *Id.* at 564. In *Nat'l Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459 (1999), the Supreme Court held that "dues payments from recipients of federal funds" do not "suffice to subject [an entity] to suit under Title IX." 525 U.S. at 470. In so holding, the Court reasoned that "[e]ntities that receive federal assistance, whether directly or through an intermediary, are recipients within the meaning of Title IX; entities that only benefit economically from federal assistance are not." *Id.* at 468; *see also Jennings v. Univ. of N.C.*, 444 F.3d 255, 268 n.9 (4th Cir. 2006*), overruled on other grounds by* 482 F.3d 686 (4th Cir. 2007) (en banc). These opinions confirm that an institution still qualifies as a recipient of federal assistance under Title IX even if it did not apply for the aid or the aid is indirectly provided.

The Supreme Court has also considered the purpose and scope of tax exemptions. In *Regan v. Taxation with Representation*, 461 U.S. 540 (1983), the Supreme Court ruled that the

provision in 26 U.S.C. § 501(c)(3) prohibiting tax exempt status for organizations that seek to influence legislation does not violate the First Amendment. 461 U.S. at 550–51. In its analysis, the Court discussed the nature of tax exemptions and tax deductions and concluded that:

> Both tax exemptions and tax-deductibility are a form of subsidy that is administered through the tax system. A tax exemption has much the same effect as a cash grant to the organization of the amount of tax it would have to pay on its income . . . . Congress chose not to subsidize lobbying as extensively as it chose to subsidize other activities that non profit organizations undertake to promote the public welfare.

*Id.* at 544. The Supreme Court has therefore recognized § 501(c)(3) status as a form of Congressional subsidy and the equivalent of a cash grant.

Additionally, and equally as important, the Supreme Court has held that tax exempt institutions "must demonstrably serve and be in harmony with the public interest." *Bob Jones Univ. v. United States*, 461 U.S. 574, 592 (1983). Similarly, in *Green v. Connally*, 330 F. Supp. 1150 (D.D.C. 1971), the District Court for the District of Columbia held that schools that discriminate on the basis of race are not entitled to federal tax exemptions. 330 F. Supp. at 1156. The court recognized that there is a "well-established principle that the Congressional intent in providing tax deductions and exemptions is not construed to be applicable to activities that are either illegal or contrary to public policy." *Id.* at 1161. This Court believes the same principle applies to discrimination on the basis of sex. Indeed, the Supreme Court in *Cannon v. Univ. of Chicago*, 441 U.S. 667 (1979), noted that Title VI served as a "model" for Title IX and concluded that "Congress intended to create Title IX remedies comparable to those available under Title VI . . . ." 441 U.S. at 704.

Plaintiffs have noted Eleventh Circuit case law to support their position that CPS is subject to Title IX requirements due to its tax-exempt status. In *M.H.D. v. Westminster Sch.*,

10

172 F.3d 797 (11th Cir. 1999), the Eleventh Circuit concluded that the appellant's allegation that tax exempt qualifies as "federal financial assistance" under Title IX provisions was "neither immaterial nor wholly frivolous." 172 F.3d at 802 n.12.[7] Plaintiffs also observe that tax exempt organizations are subject to the requirements under Title VI of Civil Rights Act of 1964, 42 U.S.C. 2000d *et seq.*, and note that Title IX was modeled after Title VI. *See McGlotten v. Connally,* 338 F. Supp. 448, 461 (D.D.C.1972) (holding that "assistance provided through the tax system is within the scope of Title VI of the 1964 Civil Rights Act"); *Fulani v. League of Women Voters Educ. Fund,* 684 F. Supp. 1185, 1192 (S.D.N.Y.1988) (noting that an entity was subject to Title VI *and* Title IX enforcement because it "receive[d] federal assistance indirectly through its tax exemption and directly through grants" from federal agencies).[8]

CPS rejects Plaintiffs' argument that its tax-exempt status subjects it to the mandates of Title IX, relying primarily on *Johnny's Icehouse, Inc. v. Amateur Hockey Ass'n*, 134 F. Supp. 2d 965 (N.D. Ill. 2001). In *Johnny's Icehouse*, a women's hockey team contended that Amateur Hockey Association was subject to Title IX because its 501(c)(3) status qualified as a form of federal assistance. 134 F. Supp. 2d. at 966. The district court denied this argument, referring to the Title IX regulations that define "federal financial assistance" and observing that income tax exemptions are "conspicuously absent from that laundry list." *Id.* at 971 (citing 34 C.F.R.

---

[7] *See also Barrs v. S. Conference*, 734 F. Supp. 2d 1229, 1232 (N.D. Ala. 2010) (adopting the reasoning of *M.H.D.* and concluding that plaintiff's claim that a tax exemption constitutes federal financial assistance under Title IX "is not so wholly insubstantial and frivolous that subject matter jurisdiction is inappropriate").

[8] *See also Cannon.*, 441 U.S. at 694-95 ("Title IX was patterned after Title VI of the Civil Rights Act of 1964. Except for the substitution of the word 'sex' in Title IX to replace the words 'race, color, or national origin' in Title VI, the two statutes use identical language to describe the benefited class."); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998) (noting that Title IX and Title VI "operate in the same manner").

11

§ 106.2(g)).[9] The court concluded that "'federal financial assistance' encompasses only direct transfers of federal money, property or services from the government to a program" and that "[e]xemption from taxation just does not equate to such direct transfers."[10] *Id.* at 972.

In light of the Supreme Court's holdings in *Regan*, *Grove City College*, *Smith,* and *Cannon*, as discussed *supra*, this Court holds that § 501(c)(3) tax exemption constitutes federal financial assistance for the purposes of Title IX. Enforcing the mandates of Title IX in schools with 501(c)(3) status aligns with and protects the principal objectives of Title IX: "to avoid the use of federal resources to support discriminatory practices" and "to provide individual citizens effective protection against those practices." *Cannon,* 441 U.S. at 704.

There is no dispute that CPS received federal financial assistance in the form of § 501(c)(3) income tax exemption in the years Plaintiffs or their daughters attended the school. (*E.g.*, RDB-21-0691, Financial Statements, ECF No. 39 *SEALED*.) Additionally, as to Plaintiff H.C., CPS's Motion is denied because there is no dispute that H.C. enrolled at CPS in Fall 2019 and remained a student there through at least Spring 2020. (RDB-20-3229, ECF No. 21 ¶¶ 11, 90, 114.) CPS applied for and received a PPP loan through the SBA between

---

[9] The Department of Education's Title IX regulations define "federal financial assistance" by enumerating the types of grants and aid that qualify "when authorized or extended under a law administered by the Department." 34 C.F.R. § 106.2(g). Neither party raises any argument as to whether § 501(c)(3) status qualifies as assistance administered by the Department of Education. *Id.* Moreover, this Court is not convinced that this regulation precludes a finding that § 501(c)(3) status qualifies as "federal financial assistance" in the Title IX context, given the statute's shared objectives with Title VI and the Supreme Court's conclusion that tax exemptions are a form of subsidy and the equivalent of a cash grant. *See Cannon*, 441 U.S. at 704; *Regan v. Taxation with Representation*, 461 U.S. 520, 550–51 (1983).

[10] In its Reply, CPS cites several other district court opinions that lend support for its position, but do not announce a holding in support of that position as clearly as the decision in *Johnny's Icehouse*. *See, e.g., Stewart v. N.Y. Univ.*, 430 F. Supp. 1305, 1314 (S.D.N.Y. 1976); *Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 322 n.2 (E.D.N.Y. 2012); *Bachman v. Am. Soc'y of Clinical Pathologists*, 577 F. Supp. 1257 (D.N.J. 1983). (RDB-21-0691, ECF No. 45 at 8-9.)

March and April 2020, and that loan was forgiven as of November 10, 2020.[11] (*E..g*, RDB-20-3229, Johnson Tr. 394, ECF No. 77-1 *SEALED* ; SBA Award Confirmation, ECF No. 77-10 *SEALED*; Def. Answers to Interrogs. 26, ECF No. 77-3 *SEALED*.) CPS argues that all of the events giving rise to H.C.'s Title IX claim occurred before it accepted the SBA funding on April 8, 2020, but there is no evidence in the record supporting that claim. Accordingly, all of CPS's Motions are DENIED.

## CONCLUSION

For the reasons stated above, Defendant Concordia Preparatory School's Partial Motions for Summary Judgment as to the Title IX claims asserted in Count I of the Amended Complaints of Plaintiffs N.H., Pullen, H.C., Gomez, and A.G. (RDB-20-3132, ECF No. 108; RDB-20-3214, ECF No. 60; RDB-20-3229, ECF No. 75; RDB-20-3267, ECF No. 112; RDB-21-0691, ECF No. 37) are DENIED.

A separate Order follows.

Dated: July 21, 2022

_____/s/_____
Richard D. Bennett
United States District Judge

---

[11] The parties agree that on April 8, 2020, CPS received a loan from the SBA through the Paycheck Protection Program established by the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. The parties also agree that this loan constitutes federal financial assistance for the purposes of Title IX. It is undisputed that Plaintiffs N.H., Pullen, Gomez, and A.G. had stopped attending CPS well before the school applied for and received the SBA loan. Pursuant to 13 C.F.R. 113.3(a), "recipients of financial assistance [from the SBA] may not: (a) Discriminate with regard to goods, services, or accommodations offered or provided by the aided business or other enterprise, whether or not operated for profit, because of race, color, religion, sex, handicap, or national origin of a person, or fail or refuse to accept a person on a nonsegregated basis as a patient, student, visitor, guest, customer, passenger, or patron." Once an SBA loan is forgiven, however, a recipient is no longer subject to "any legal obligations [it] incur[s] through [its] receipt of [the] loan." (RDB-20-3229, SBA Faith-Based Organizations FAQ 2, ECF No. 83-2.)